**WALNUT STREET CO. v. GLENN, Collector of Internal Revenue.**

No. 1192.

United States District Court
W. D. Kentucky. Louisville Division.

Sept. 24, 1948.

Allen P. Dodd and Henry H. Mathis, both of Louisville, Ky., for plaintiff.

David C. Walls, U. S. Atty., of Louisville, Ky., and Henry L. Spencer, Sp. Asst. to the Atty. Gen., for defendant.

946

SHELBOURNE, Chief Judge.

Plaintiff is asking for recovery of $6,549.07 with interest, which is the total amount of surtax, interest and penalties assessed and collected from plaintiff for the fiscal years ended August 31, 1942, August 31, 1943, and August 31, 1944.

The case was tried to the Court December 5, 1947, without a jury. There is no dispute as to the material facts.

Plaintiff, Walnut Street Company, is a Kentucky Corporation organized in August, 1941, by Elden E. Durand, Sr., and Elden E. Durand, Jr., who at that time were partners, doing business under the partnership name of "Durands". They operated a department store in leased property at 313–315 West Walnut Street, Louisville.

Defendant, S. R. Glenn, is, and was at all times mentioned, the duly qualified and acting Collector of Internal Revenue for the State of Kentucky, and is now so acting.

The sole purpose of the organization of plaintiff was to purchase, and it did purchase, the leased storehouse building and lot at a cost of $70,000.

On August 31, 1941, the Walnut Street Company leased the storehouse building to "Durands" for a fixed rental of $540 per month and the further consideration that Durands pay all taxes assessable against the real estate and improvements, make all necessary repairs and keep adequate insurance with loss clauses payable to the lessor. The lease was for a term of five years with the right and option of renewal.

At the time of organization and thereafter, Elden E. Durand, Sr., and Elden E. Durand, Jr., were stockholders and owned more than ninety percent of all of the outstanding capital stock. For the years involved, the Walnut Street Company received income from the partnership "Durands" for the use of the building—

| | |
|---|---|
| August 31, 1942 | $11,372.50 |
| August 31, 1943 | 10,205.00 |
| August 31, 1944 | 9,420.00 |

It received no other income, other than $400 realized from the sale of fixtures during the year 1944.

Plaintiff filed its corporation and excess profits tax returns on the accrual basis for each of the fiscal years involved on which the statement was made—"the corporation is not a personal holding company".

The Commissioner on audit held the company was a holding company within the meaning of Section 501(a) (1) and (2) of the Internal Revenue Code, 26 U.S.C.A. § 501(a) (1, 2), and that the income received for the fiscal years was personal holding company income within the meaning of Section 502(f, g), 26 U.S.C.A. § 502(f, g), and that it was subject to the surtax on personal holding companies provided in Section 500(a) (1) (2) and a penalty of 25 percent under Section 291 for failure to file personal holding company returns.

Subsections (f) and (g) of Section 502 of the Code are as follows—

"(f) Use of corporation property by shareholder. Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.

"(g) Rents. Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term 'rents' means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; but does not include amounts constituting personal holding company income under subsection (f)."

The questions presented are—

(1) Whether the Commissioner of Internal Revenue erred in determining that taxpayer, Walnut Street Company, was a personal holding company within the meaning of Section 501 of the Code and taxable as such for each of the fiscal years.

(2) Whether the taxpayer was liable for the 25 percent penalty assessed and collected, because of failure to file a personal holding company return for each of the fiscal years.

Plaintiff's contention is that

(1) As to "Stock ownership requirement" Subsection (a) (2) Section 501, it is a personal holding company, when that subsection is considered without reference to the other subsections of 501; (2) When applying subsection (a) (1) of Section 501, the "gross income requirement" takes plaintiff out of the classification as a personal holding company, because its income was not "personal holding company income" as defined in Section 502. That applying Section 502, subsection (f) which is the section relied on by defendant, the income of the Walnut Street Company was not personal holding income, because not received by it from any individual stockholder who was "entitled to the use of the property".

Boiled down, the contention of plaintiff seems to be that it is a personal holding company, but the income received by it is not personal holding income, because not received by the corporation from an "individual" stockholder who was entitled to the use of the property; that the partnership, "Durands", is a separate legal entity from its two individual partners.

It is admitted that Walnut Street Company derived all of its income (with exception of $400 representing proceeds of sale of fixtures in 1944) during each of the fiscal years involved from the payment of rent for the use of the building. During each of the years here involved, the two individual partners in "Durands" owned more than ninety percent of the capital stock of plaintiff corporation.

The tax returns, Form 1120, entitled "Corporation Income and Declared Value Excess-Profits Tax", were prepared by L. C. Barnett of the firm of L. C. Barnett & Company, income tax consultants and accountants. L. C. Barnett and the company are shown to have high standing as tax experts and had been tax advisers to the elder Durand for fifteen or twenty years prior to the time of the trial. Mr. Barnett stated it was his opinion at the time the returns were made that the corporation was not liable for the personal holding company income tax.

R. J. Lanum, the Internal Revenue agent from the Louisville office who made an examination of the returns for the three years in question, says that he asked Mr. Durand, Jr., "if he would not sign a personal holding company return" and that Mr. Durand declined to make the return, giving as his reason his opinion that they were not liable for the tax. Mr. Durand testified that this statement was made to the tax representative upon the advice of Mr. L. C. Barnett.

## Conclusions of Law

The identical question here involved was before the Tax Court in the case of Furniture Finance Corporation, petitioner, v. Commissioner, 46 B.T.A. 240. All of the shares of stock of the plaintiff corporation in that case were owned by David Light and Harry W. Zavin. The entire income for the taxable year there involved represented rent received from a building owned by the corporation and leased to a partnership composed of Light and Zavin. The Tax Court there said: "Since all of petitioner's income is rent received from the partnership for the use of petitioner's property, and each partner is deemed to own all of the outstanding stock, such rent is 'personal holding company income' under Section 353(f), now section 502(f)."

This holding was approved in subsequent cases of Bro-Jeff Theatres, Inc., v. Commissioner, 5 T.C. 1389, and in the case of Minnesota Mortuaries, Inc. v. Commissioner, 4 T.C. 280, in which the Court, referring to its opinion in Furniture Finance Corporation, supra, said: "Since a partnership is not considered an entity separate and apart from the individual partners, it was held that each partner was

948

entitled to the use of the property and the rent received by the holding company was 'personal holding company income' under section 353(f)."

Plaintiff's counsel relies upon Hatfried, Inc., v. Commissioner, 3 Cir., 162 F.2d 628, in support of his contention that the statute involved should be strictly construed and that particular strictness and literal construction do not permit extending the word "individual" appearing in the statute as embracing a partnership. He relies also upon the opinion of the Tax Court in the case of Whitney et al. v. Commissioner, 8 T.C. 1019, in which, construing section 24(b)(1)(B), the Tax Court held the term "individual" there used did not include partnerships.

■ It is the conclusion of this Court that the income received by Walnut Street Company as rental for its building was in each of the years involved personal holding company income and being received from the partnership in which the individual partners own more than ninety percent of plaintiff's stock, the assessment of the deficiency tax by the Commissioner was proper.

The remaining question whether the penalty was properly imposed depends upon a proper construction of Section 291 of the Internal Revenue Code, which is as follows: "In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *" 26 U.S.C.A. § 291.

Plaintiff relies upon the case of Hatfried, Inc., v. Commissioner, supra. Counsel for the Government relies strongly upon the case of Fides, A. G. v. Commissioner, 4 Cir., 137 F.2d 731, 735, certiorari denied 320 U.S. 797, 64 S.Ct. 266, 88 L.Ed. 481, in which the Court said: "If the putative taxpayer, in any case of doubt, should be permitted to fail to file a tax return, hoping this failure would never be detected, and then if detection should follow, to escape the prescribed penalty by a mere statement that taxpayer's counsel entertained a subjective belief, whether well-founded or not, that taxpayer was not subject to the tax statute in question, then any statutory penalty provision would become less than a brutum fulmen."

■■ Measured by this rule, we think the complete answer was made by the Court in the Hatfried opinion. There, as here, the tax return was prepared by a certified public accountant who was the taxpayer's adviser in tax matters. No penalty should have been assessed unless the failure to file was without reasonable cause and was due to willful neglect.

"The Courts, as above stated, have ruled that 'reasonable cause means nothing more than the exercise of ordinary business care and prudence' and 'willful' as 'intentional, or knowing or voluntary'.

"To hold that a taxpayer who selects as his agent a certified public accountant (to whom as a class the Treasury Department and the Tax Court itself accord recognition as 'experts' and as 'counsel') has failed to exercise 'ordinary business care and prudence' and becomes liable for the error of his advisor as 'agent' is an inconceivable proposition." [162 F.2d 635]

■ The failure to file personal holding company returns in each of the years was due to the belief in good faith on the advice of a reputable tax accountant and expert that the corporation was not a personal holding company within the meaning of Section 501 of the Internal Revenue Code and was not willful within the meaning of the penalty statute.

It is therefore concluded that plaintiff's petition insofar as it seeks a recovery of the tax shall be dismissed, but that plaintiff is entitled to recover the penalties of 25 per cent assessed in each of the years.